HELANE L. MORRISON (Calif. Bar No. 127752)
JOHN S. YUN (Calif. Bar No. 112260)
MICHAEL S. DICKE (Calif. Bar No. 158187)
CRAIG D. MARTIN (Calif. Bar No. 168195)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California  94104
Telephone:  (415) 705-2500
Fax: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>DAVID CHANG and QWAI HOONG LOW,<br><br>　　　　　　Defendants. | Civil Action No.<br><br>COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Securities and Exchange Commission (the "Commission") alleges, on information and belief:

**SUMMARY OF THE ACTION**

1.　　This is an insider trading case in which Defendant David Chang ("Chang") purchased securities in nVIDIA Corporation ("nVIDIA" or the "Company") based on confidential information he learned while employed by the Company and made $70,813 in illegal trading profits.  Chang shared this information with his friend, Qwai Hoong Low ("Low"), who bought nVIDIA stock and made $18,439.06 in illegal profits.

2.　　On March 6, 2000, Chang, who was then an nVIDIA engineer, purchased 1,000 shares of nVIDIA stock for approximately $59,144 based on his advance knowledge that the Company had just won a lucrative contract with Microsoft Corporation ("Microsoft").  Chang

COMPLAINT

placed an order to purchase another 1,000 nVIDIA shares on March 7, which was executed the next day for a total purchase price of $82,582.  Within days, the price of nVIDIA stock soared as the market learned of the contract.  Chang made $70,813 in unlawful profits.  His tippee, Low, purchased 500 nVIDIA shares on March 6, 2000 for $30,217 and made illegal profits of $18,439.06.

3. By trading on material, nonpublic information concerning nVIDIA's contract with Microsoft, Defendants violated Section 10(b) of the Securities Exchange Act ("Exchange Act") of 1934 [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

## AUTHORITY TO BRING THIS ACTION

4. The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1(c)].

5. Defendants, directly and indirectly, have engaged in transactions, acts, practices and courses of business that constitute violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] promulgated thereunder.

6. Defendants will, unless enjoined, continue to engage in the acts, practices and courses of business alleged herein, or in transactions, acts, practices and courses of business of similar purport and object.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1 and 78aa].

8. Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

9. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Defendants reside and transact business in the Northern District of California.

10. Assignment to the San Jose Division is appropriate pursuant to Civil Local Rule 3-2(c) and (e).

COMPLAINT

**DEFENDANTS**

11. Chang, age 41, resides in San Jose, California. At all relevant times, Chang was employed by nVIDIA as an engineer at its offices in Santa Clara, California.

12. Low, age 50, resides in Cupertino, California. At all relevant times, Low was employed as an engineer at a San Francisco Bay Area software company.

**RELEVANT ENTITY**

13. nVIDIA is a Delaware corporation, with its principal place of business in Santa Clara, California, that develops and markets computer graphics components. nVIDIA's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act and is publicly quoted on the Nasdaq National Market.

**DEFENDANTS' ILLEGAL CONDUCT**

**Chang Bought nVIDIA Securities on December 9, 1999**

**After Learning that Microsoft Had Informed nVIDIA It Had Won the X-Box Contract**

14. Beginning in 1999, nVIDIA competed for a contract to supply graphics accelerator components for Microsoft's anticipated video game console, the "X-Box." On the evening of December 8, 1999, at 9:18 p.m., nVIDIA's president and chief executive officer, Jen-Hsun Huang ("Huang"), sent an electronic mail message ("email") to all nVIDIA employees informing them that Microsoft would award the X-Box contract to nVIDIA. That email, entitled "We Won XBOX," read in part:

> We were officially informed today that we've won the Microsoft xbox! xbox is Microsoft and NVIDIA's response to the Playstation 2. . . . Financially, xbox will generate hundreds of millions of dollars for NVIDIA. . . . I know word is spreading in the company. But I need all of you to keep a tight lid on this. . . . The contract is not signed, so let's play it safe and keep the news to ourself [sic].

15. At the time the "We Won XBOX" email was distributed, the information concerning the X-Box was confidential and nonpublic.

16. After he arrived at work on December 9, 1999, Chang read the "We Won XBOX" email. Based on the information in the "We Won XBOX" email, beginning at 9:28 a.m., Chang

placed orders to purchase a total of 600 shares of nVIDIA stock, spending approximately $22,636. Later that morning, Chang purchased short-term call options. Chang bought 3 January 45 call options for $860. Each January 45 call option gave Chang the right, prior to their January 22, 2000, to purchase 100 shares of nVIDIA stock at $45 per share.

17. In late February, 2000, however, Microsoft informed nVIDIA that it would award the X-Box to an nVIDIA competitor, GigaPixel Corporation. Huang conveyed this information to nVIDIA's employees and contract workers in a February 23, 2000 email entitled "xbox update." The email stated that while "[t]he deal is clearly not done yet," nVIDIA had been "told by Microsoft that they had decided to go with Gigapixels [sic]."

**Chang and Low Purchased nVIDIA Stock During the Week of March 6, 2000
After Learning of the Microsoft Contract**

18. Negotiations between nVIDIA and Microsoft, however, continued in late February and early March 2000. On Sunday, March 5, 2000, nVIDIA and Microsoft entered into an agreement providing for nVIDIA to design and manufacture the 3D computer graphics and multimedia subsystem for the X-Box. That evening, Huang sent an email to all nVIDIA employees and contract workers informing them that nVIDIA had won the Microsoft contract. The email, entitled "X is Ours!," stated, among other things:

> Xbox deal is closed! . . . The deal is pretty simple -- we build a custom chip . . . . Microsoft "prepays" us $200M (that's right -- $200,000,000) as their commitment to the program. If Xbox becomes as big as Sony Playstation, we generate about $2B in sales over 5 years.

19. At the time the "X is Ours!" email was distributed, nVIDIA's receipt of the Microsoft contract was confidential, nonpublic information.

20. The following morning, on March 6, 2000 at approximately 9:15 a.m., nVIDIA's vice president of marketing, Dan Vivoli ("Vivoli"), sent all nVIDIA employees an email entitled "xbox shhhhhh…," reminding them that news of the X-Box contract was confidential. The email stated, in part:

COMPLAINT

4

> [Huang] called me a few minutes ago (he is traveling) and asked that I remind everyone to keep the xbox news quiet. Not a word to anyone outside of our walls. Let the news roll out in a controlled way. Microsoft plans to make the news public [March 10] at [an industry conference]. But anything can happen; lets don't jinx it!

21. After he arrived at work at nVIDIA on Monday, March 6, 2000, Chang read the March 5 email from Huang informing employees of the X-Box contract. In addition, Chang read the March 6 email from Vivoli reminding nVIDIA employees that information concerning the X-Box contract was confidential.

22. Later in the morning of March 6, 2000, after reading these two emails, Chang purchased nVIDIA stock through an online brokerage account. Based on the "X is Ours!" email, beginning at 10:26 a.m., Chang spent $59,144 to purchase a total of 1,000 shares of nVIDIA stock. Chang also tipped Low that morning and encouraged him to purchase nVIDIA stock. Low complied, purchasing 500 nVIDIA shares at 10:53 a.m. for a total purchase price of $30,217.

23. The next evening, on March 7, at 10:17 p.m., Chang placed an order to buy another 1,000 shares of nVIDIA stock. The order was executed on the morning of March 8, 2000 for a total purchase price of $82,582.

### nVIDIA's Stock Price Rose in Response to X-Box Reports

24. On March 7, 2000, nVIDIA stock rose 42.4% to close at $83.31 per share as rumors were reported on the Internet and in the press that nVIDIA had won the X-Box contract. On March 9, 2000, nVIDIA stock rose another 19.4% to close at $100.30 per share.

25. On March 10, 2000, prior to the opening of the stock market, Microsoft publicly announced the award of the X-Box contract to nVIDIA. That day, nVIDIA stock rose another 17.6% to close at $118 per share.

### Chang's Trades Violated nVIDIA's Policies on Insider Trading and Use of Confidential Information

26. At all relevant times, nVIDIA had an insider trading policy that prohibited its employees from trading in nVIDIA securities based on material, nonpublic information

concerning the Company and from tipping outsiders with material, nonpublic information. Chang received nVIDIA's insider trading policy prior to the time he purchased nVIDIA stock on March 6, 2000.

### CLAIM FOR RELIEF

### (Insider Trading)

Violations of Section 10(b) of the Exchange Act
[15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5]
Promulgated Thereunde7

27. Paragraphs 1 through 26 are re-alleged and incorporated herein by reference.

28. Chang had a fiduciary duty to nVIDIA and its securities holders not to trade in nVIDIA securities, either directly or indirectly, based on material, nonpublic information concerning the Company. Chang breached that duty when he purchased nVIDIA stock on March 6, 2000 based on material, nonpublic information concerning Microsoft's award of the X-Box contract to nVIDIA and when he disclosed material, non-public information about nVIDIA to Low on March 6, 2000. By reason of their long-time, close personal relationship, Chang obtained a personal, non-monetary benefit by disclosing this information to Low so that Low could trade.

29. Low knew or was reckless in not knowing that Chang was acting in breach of his fiduciary duty to nVIDIA and its securities holders by disclosing to Low material, non-public information about nVIDIA on March 6, 2000.

30. Defendants, with scienter, directly or indirectly:

a) employed devices, schemes, or artifices to defraud;

b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities;

COMPLAINT

in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, of the mails, or the facilities of a national securities exchange.

31.     By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

**I.**

Permanently enjoin Defendants and their agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the final judgment of permanent injunction by personal service or otherwise, and each of them, from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder;

**II.**

Enter an Order requiring Defendants to disgorge an amount equal to their illegal trading profits from the securities transactions complained of herein, plus prejudgment interest;

**III.**

Enter an Order requiring Defendants to pay civil penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-l]; and

COMPLAINT

**IV.**

Grant such other relief as this Court may deem just and appropriate.

DATED:  November 16, 2001

Respectfully submitted,

/s/_____

Helane L. Morrison
John S. Yun
Michael S. Dicke
Craig D. Martin

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California  94104

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

By  /s/_____

Helane L. Morrison
John S. Yun
Michael S. Dicke
Craig D. Martin

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California  94104

COMPLAINT